IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **Touchpoint Projection Innovations, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Cloudflare, Inc.,**<br><br>Defendant. | **Civil Action No.<br>2:24-cv-00343-JRG<br>(Lead Case)** |
| **Touchpoint Projection Innovations, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Imperva, Inc.,**<br><br>Defendant. | **Civil Action No.<br>2:24-cv-00345-JRG<br>(Member Case)** |

**DEFENDANT CLOUDFLARE, INC.'S MOTION TO
DISMISS PLAINTIFF'S ORIGINAL COMPLAINT FOR IMPROPER VENUE**

August 15, 2024

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................ 1

II.     RELEVANT FACTS ........................................................................................................... 1

III.    THE COURT SHOULD DISMISS THE CASE FOR IMPROPER VENUE ...................... 6

      A.     Venue Is Proper Only Where Cloudflare (i) "Resides" (i.e., Delaware)
           Or (ii) Has Committed Acts Of Infringement And Has A
           Regular And Established Place Of Business............................................................ 6

      B.     Cloudflare Does Not Have A Regular And Established Place Of
           Business In The Eastern District Of Texas—As Such, Venue
           In East Texas Is Improper ........................................................................................ 7

IV.    CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) ................................................................................................... 7

*Andra Group, LP v. Victoria's Secret Stores, LLC*,
  19-CV-288, 2020 WL 1465894 (E.D. Tex. Mar. 26, 2020) ...................................................... 7

*CUPP Cybersecurity LLC v. Symantec Corp.*,
  18-CV-01554, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ................................................... 9

*Delta Elecs., Inc. v. Vicor Corp.*,
  23-CV-00726, 2024 WL 1200328 (W.D. Tex. Mar. 20, 2024) .................................................. 7

*Hand Held Products, Inc. v. Code Corp.*,
  265 F. Supp. 3d 640 (D.S.C. 2017) .......................................................................................... 8

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ...................................................................................... 6, 7, 8

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ......................................................................................... 6, 10

*In re Volkswagen Group of Am., Inc.*,
  28 F.4th 1203 (Fed. Cir. 2022) ............................................................................................ 6, 9

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) ................................................................................................ 6

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
  581 U.S. 258 (2017) ................................................................................................................. 1

*Zilkr Cloud Techs., LLC v. RingCentral, Inc.*,
  21-CV-2807, 2022 WL 1102863 (N.D. Tex. Apr. 12, 2022) .................................................... 9

**Statutes**

28 U.S.C. § 1400(b) .................................................................................................................. 1, 8

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendant Cloudflare, Inc. ("Cloudflare") files this Motion to Dismiss Plaintiff Touchpoint Projection Innovations, LLC's ("Touchpoint") Original Complaint for Patent Infringement (the "Complaint") (ECF No. 1) for Improper Venue (the "Motion"), and respectfully shows as follows:

## I.  INTRODUCTION

In patent cases, venue is proper for a domestic corporation like Cloudflare only in the judicial district where (i) the defendant "resides" (i.e., its state of incorporation) or (ii) the defendant (a) has committed acts of infringement and (b) has a regular and established place of business. *See TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 268 (2017); 28 U.S.C. § 1400(b). Here, Cloudflare "resides" in Delaware, as it is a Delaware corporation, and it has no regular and established place of business in the Eastern District of Texas.[1] As such, venue in the Eastern District of Texas is improper, and the Court should dismiss the case under Rule 12(b)(3).

## II.  RELEVANT FACTS

1. Cloudflare is (and at all relevant times has been) a Delaware corporation. *See* Reeves Decl. ¶ 3. Its principal place of business is in San Francisco, California, and its only office in Texas is in Austin, Texas (in the Western District of Texas). *Id.* It has no offices or regular and established places of business in the Eastern District of Texas. *Id.* ¶ 4.

2. Cloudflare's U.S. offices are located in Austin, Champaign (Illinois), San Francisco, San Jose, Seattle, and Washington, D.C. *See* Reeves Decl. ¶ 5.

---

[1] Cloudflare also disputes that it has committed any "acts of infringement" within the Eastern District of Texas, but because Cloudflare's lack of residency and lack of a regular and established place of business in East Texas are dispositive of the venue inquiry, the Court need not reach the "acts of infringement" question.

3. In support of its venue allegations, Touchpoint alleges that "Cloudflare's Insights is used in [] the Plano area by at least 197 users, including Cinemark.com, plano.gov, disabilityover50.com, and many others" and Cloudflare "ratifies [such] businesses located within this district . . . through the direction and control implemented by [Cloudflare] over its users[.]"[2] Compl. ¶¶ 7, 13. Touchpoint also alleges that Cloudflare "utilizes points-of-presence and/or edge computing sites in Texas [sic] are located at 6653 Pinecrest Drive, Plano, Texas 75024 and 1950 N Stemmons Freeway, Dallas, Texas 75207."[3] *Id.* ¶ 8.

4. For the purposes of this Motion, Cloudflare does not dispute that (i) Cloudflare has customers who use various Cloudflare products and services within the Eastern District of Texas[4] and (ii) Cloudflare leases space in data centers throughout the world, including in the United States, and within the Eastern District of Texas. Reeves Decl. ¶¶ 8, 13.

5. A content delivery network ("CDN") is a geographically distributed network of servers that, among other things, caches content close to end users. A CDN may help to enable the quick transfer of assets needed for loading Internet content, including HTML pages, JavaScript files, stylesheets, images, and videos. *See* Reeves Decl. ¶ 6. Primary benefits of using a CDN may include improving website load times, reducing bandwidth costs, increasing content availability and redundancy, and improving website security. *Id.*

6. Cloudflare's CDN is found in approximately 330 cities in 120+ countries. Reeves

---

[2] Cloudflare offers a variety of analytics products which provide Cloudflare's customers with insight into their website traffic and performance. *See* Reeves Decl. ¶ 15. "Insights" or "Cloudflare Insights" refer to various of these analytics products. "Insights" are capabilities of Cloudflare, and "Insights" does not refer to a Cloudflare office or physical location. *Id.*

[3] The 1950 N Stemmons Freeway, Dallas, Texas 75207 address pointed to by Touchpoint is in the Northern District of Texas, not the Eastern District of Texas. *See* Callahan Decl. ¶¶ 4-7.

[4] Touchpoint's allegations of infringement are vague and ambiguous, and it is not possible for Cloudflare to determine what specific Cloudflare product or service is accused of infringement.

Decl. ¶ 7.

7. A "data center" (sometimes referred to as a "point of presence" or "PoP") generally refers to a physical location in which computers are networked together in order to, among other things, improve usability and reduce costs related to storage, bandwidth, and other networking components. *See* Reeves Decl. ¶ 8.

8. Within Cloudflare's CDN, a Cloudflare "edge server" is a server (computer) that exists at the logical extreme or "edge" of the network, and often serves as the connection between separate networks. Reeves Decl. ¶ 9. Edge servers store (cache) content in strategic locations to take the load off of one or more origin servers (the web servers that receive Internet traffic when a web property is not using a CDN), and to reduce the amount of time it takes for a web resource (like images, or HTML and JavaScript files) to load. *Id.* One primary purpose of a CDN edge server is to store content as close as possible to a requesting client machine (e.g., a person accessing a website from his or her computer), thereby reducing latency and improving webpage load times. *Id.*

9. Within Cloudflare's CDN, network appliances are used to connect the computers of third parties, such as internet service providers ("ISPs"), or other content delivery platforms, with Cloudflare's CDN edge servers. Cloudflare's network appliances physically interconnect with the network appliances of those third parties. Networks appliances include equipment such as routers and switches. Reeves Decl. ¶ 10.

10. Cloudflare may maintain edge servers and/or networking appliances in data centers in various locations around the world to power Cloudflare's CDN. *Id.* ¶ 11. A data center, for Cloudflare, houses hardware. It is not an office where Cloudflare employees routinely work, nor is it a facility open to the public like a retail store that could be frequented by Cloudflare's cus-

3

tomers or other members of the public. *Id.*

11. Cloudflare does not own any data centers or data center space within the Eastern District of Texas. Instead, in any instance in which Cloudflare utilizes data center space within the Eastern District of Texas, Cloudflare is a customer of a third party who owns and operates the data center. In other words, Cloudflare leases "rack space" from the third party. *Id.* ¶ 12.

12. Cloudflare maintains some limited equipment within data centers within the Eastern District of Texas. *Id.* ¶ 13. Cloudflare has been able to locate the following with respect to data centers in which Cloudflare leases space within the Eastern District of Texas:

    a. 6653 Pinecrest Drive, Plano, Texas 75024: this location is an Equinix data center that Cloudflare leases space in. Cloudflare does not own or operate this data center, and has no employees located there. Cloudflare does not hold this location out as a Cloudflare office or place of business. Cloudflare's records indicate "rack space" has been leased at this location but Cloudflare does not at this time have equipment in operation serving Cloudflare CDN customer traffic from this location. Nor did Cloudflare have equipment in operation serving Cloudflare CDN customer traffic at the time the Complaint was filed by Touchpoint in this litigation.

    b. 820 Allen Commerce Parkway, Allen, Texas 75013: this location is a Tierpoint data center that Cloudflare leases space in. Cloudflare does not own or operate this data center, and has no employees located there. Cloudflare does not hold this location out as a Cloudflare office or place of business. Cloudflare's records indicate that "rack space" has been leased at this location, and network appliances and/or edge servers are onsite, but such

      equipment does not at this time serve Cloudflare CDN customer traffic from this location. Nor did Cloudflare have equipment in operation serving Cloudflare CDN customer traffic from this location at the time the Complaint was filed by Touchpoint in this litigation.

   c.   900 Guardians Way, Allen, Texas 75013: this location is an Evoque data center that Cloudflare leases space in. Cloudflare does not own or operate this data center, and has no employees located there. Cloudflare does not hold this location out as a Cloudflare office or place of business. Cloudflare's records indicate that "rack space" has been leased at this location, and network appliances and/or edge servers are onsite, but such equipment does not at this time serve Cloudflare CDN customer traffic from this location. Nor did Cloudflare have equipment in operation serving Cloudflare CDN customer traffic from this location at the time the Complaint was filed by Touchpoint in this litigation. *See* Reeves Decl. ¶ 13.

13.    Cloudflare does not "ratify" its customers' places of business. For example, Cloudflare does not exercise any control over its customers' locations or dictate that its customers have any specific places of business within the United States, or condition Cloudflare providing services on its customers having any specific place of business in the United States. Nor does Cloudflare hold its customers' places of business out as Cloudflare's own place of business or otherwise represent that Cloudflare's customers' places of business have been approved or blessed by Cloudflare. Reeves Decl. ¶ 14.

### III.     THE COURT SHOULD DISMISS THE CASE FOR IMPROPER VENUE

#### A.     Venue Is Proper Only Where Cloudflare (i) "Resides" (i.e., Delaware) Or (ii) Has Committed Acts Of Infringement And Has A Regular And Established Place Of Business

"The burden to establish venue in patent infringement cases rests with the plaintiff." *In re Volkswagen Group of Am., Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022); *see also In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018) ("[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue."). Federal Circuit law governs the venue determination. *Volkswagen*, 28 F.4th at 1207.

Following *TC Heartland*, venue in patent cases where a U.S. corporation is the defendant (like this case) is proper only (i) where the defendant "resides" (i.e., its state of incorporation) or (ii) where the defendant has committed acts of infringement and has a regular and established place of business. 581 U.S. at 268; *Celgene Corp. v. Mylan Pharm. Inc.*, 17 F.4th 1111, 1119 (Fed. Cir. 2021); 28 U.S.C. § 1400(b). "[T]he Supreme Court has repeatedly cautioned against a broad reading of the patent venue statute." *Volkswagen*, 28 F.4th at 1208.

There are "three general requirements relevant to the [regular-and-established-place-of-business] inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

"A 'regular and established place of business' requires **the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business**.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). "While the 'place' need not be a fixed physical presence in the sense of a formal office or store, there must still be a physical, geographical location in the district **from which the business of the defendant**

6

*is carried out.*" *Cray*, 871 F.3d at 1362 (citation and quotations omitted; emphasis added). The business must be "regular"—"sporadic activity cannot create venue." *Id.* An "established" place of business must be "stable" and "not transient." *Id.* at 1363. The place of business "must be the place of the defendant." *Id.* (quotations omitted). It cannot, for example, solely be the place of the defendant's employee. *Id.* "Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own." *Id.* "[T]he defendant must actually engage in business from that location." *Id.* at 1364. "In the final analysis, the court must identify a physical place, of business, of the defendant." *Id.*

The court may consider evidence in the record—not simply the complaint's venue allegations—when faced with a Rule 12(b)(3) motion. *See, e.g.*, *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). A court will not accept a plaintiff's allegations regarding venue as true where the defendant has offered contrary evidence. *See, e.g.*, *Andra Group, LP v. Victoria's Secret Stores, LLC*, 19-CV-288, 2020 WL 1465894, at *5 (E.D. Tex. Mar. 26, 2020) ("once the defendant comes forward with evidence that venue is improper, the plaintiff cannot rely on mere venue allegations in its complaint to maintain its chosen venue"); *Delta Elecs., Inc. v. Vicor Corp.*, 23-CV-00726, 2024 WL 1200328, at *3 (W.D. Tex. Mar. 20, 2024).

### B. Cloudflare Does Not Have A Regular And Established Place Of Business In The Eastern District Of Texas—As Such, Venue In East Texas Is Improper

Cloudflare is a Delaware corporation (*see* Section II.1) and, as a result, Touchpoint can only establish that venue is proper in the Eastern District of Texas if Cloudflare has a regular and established place of business there. As shown above (Section II.1-13), Cloudflare does not.

Instead, the only potentially relevant connection that Cloudflare has with the Eastern Dis-

7

trict of Texas is that it has certain equipment located in third-party data centers there.[5] *See* Section II.12, above. But, as the Federal Circuit recently held in *In re Google LLC*, Cloudflare's equipment in these third-party data centers in East Texas does not qualify as a regular and established place of business of Cloudflare. 949 F.3d 1338 (Fed. Cir. 2020).

In *Google*, the plaintiff argued that venue was proper in the Eastern District of Texas because defendant Google maintained "servers, which function as local caches for Google's data" within the Eastern District of Texas. *Id.* at 1340. The Google servers were not hosted within data centers owned by Google—instead, Google contracted with third-party ISPs to host Google's servers within the ISPs' data centers. *Id.*

The Federal Circuit found that Google's servers within the Eastern District of Texas did <u>not</u> constitute a regular and established place of business of Google. *Id.* at 1347. According to the Federal Circuit, "***a 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'***" *Id.* at 1345 (emphasis added). The record was clear that there "is no Google employee conducting business in the Eastern District of Texas." *Id.* at 1345.

The Federal Circuit then considered whether "the ISPs are acting as Google's agent" in such a matter that would make venue proper in the district. *Id.* at 1345. The Federal Circuit found

---

[5] The relevant inquiry is where Cloudflare has a regular and established place of business—not where Cloudflare's customers have places of business. *See* 28 U.S.C. § 1400(b) (venue proper where "***the defendant*** has committed acts of infringement and ***has a regular and established place of business***") (emphasis added); *Cray*, 871 F.3d at 1360 (to qualify as a regular and established place of business, "***it must be the place of the defendant***") (emphasis added); *Hand Held Products, Inc. v. Code Corp.*, 265 F. Supp. 3d 640, 645 (D.S.C. 2017) ("the identity of [the defendant's] South Carolina customers[] and the volume of its sales to South Carolina customers are ***not relevant to the § 1400(b) venue analysis***") (emphasis added). Touchpoint claims (Compl. ¶ 13) that Cloudflare "ratifies" Cloudflare's customers' locations within the Eastern District of Texas, but that claim is (i) unsupported by any well-pled factual allegations in the Complaint and (ii) in any event, simply wrong. *See* Section II.14, above.

8

that the ISPs were not Google's agent because:

> [T]he ISP provides the GGC [i.e., Google] servers with network access, i.e., a connection to the ISP's customers, as well as the public Internet. The ISP provides Google with a service, and Google has no right of interim control over the ISP's provision of network access beyond requiring that the ISP maintain network access to the GGC servers and allow the GGC servers to use certain ports for inbound and outbound network traffic.

*Id.* at 1345.

The Court further noted that even where the ISPs were involved in activities on behalf of Google, such as installation of Google's servers and performing maintenance on such servers, this did not constitute conducting Google's business within the meaning of the venue statute. *Id.* at 1346.

Instead, the Federal Circuit was clear that "[t]he venue statute should be read to exclude agents' activities, such as maintenance, that are merely connected to, but do not themselves constitute, the defendant's conduct of business in the sense of production, storage, transport, and exchange of goods or services." *Id.* at 1347. Accordingly, because Google had "no employee or agent regularly conducting its business at its alleged 'place of business' within the district[,]" the Eastern District of Texas was not a proper venue.[6] *Id.*

The same is true here and *Google* requires the same result—i.e., a determination that venue is not proper in this District. As shown above (*see* Section II.12), Cloudflare leases space

---

[6] *See also Zilkr Cloud Techs., LLC v. RingCentral, Inc.*, 21-CV-2807, 2022 WL 1102863, at *5 (N.D. Tex. Apr. 12, 2022) (defendant's servers located in North Texas data center were not a regular and established place of business of the defendant); *CUPP Cybersecurity LLC v. Symantec Corp.*, 18-CV-01554, 2019 WL 1070869, at *2-*3 (N.D. Tex. Jan. 16, 2019) (presence of defendant's servers at a data center owned by a third party does not constitute a regular and established place of business of the defendant); *see also In re Volkswagen Group of Am., Inc.*, 28 F.4th 1203, 1205, 1208 (Fed. Cir. 2022) (independently owned and operated Volkswagen and Hyundai car dealerships in the Western District of Texas were <u>not</u> "regular and established place[s] of business" of Volkswagen and Hyundai as dealerships were not shown to be agents of Volkswagen or Hyundai).

from third parties inside of three data centers within the Eastern District of Texas. But Cloudflare's equipment within such data centers has never been in production—neither at the time Touchpoint filed its Complaint nor as of today. Stated differently, the Cloudflare equipment located in the third-party data centers in the Eastern District is not now and was not at the time of the Complaint serving Cloudflare customer traffic within Cloudflare's CDN. Accordingly, the facts at issue here are even further removed from what was allegedly a Google "regular and established place of business" that the Federal Circuit addressed in *Google*, where Google's servers were actually in production.

In short, the Cloudflare equipment located in the third-party data centers does not constitute a regular and established place of business of Cloudflare. Likewise, Cloudflare has no employees located at these third-party data centers, let alone any "employee or agent" who has a "regular, physical presence" and is "regularly conducting [Cloudflare's] business at [Cloudflare's] alleged 'place of business' within" this District. *Google*, 949 F.3d at 1345, 1347.

## IV.    CONCLUSION

For these reasons, Cloudflare respectfully requests that the Court grant Cloudflare's Motion and dismiss the case for improper venue.

| | |
|---|---|
| Dated: August 15, 2024 | Respectfully submitted, |

_/s/ Steven Callahan_
STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendant Cloudflare, Inc.*

## CERTIFICATE OF CONFERENCE

    The undersigned certifies that he met and conferred with Plaintiff's counsel on the merits of this motion by telephone and Plaintiff's counsel has informed the undersigned that Plaintiff opposes this motion. As such, the motion is presented to the Court for determination.

_/s/ Steven Callahan_
STEVEN CALLAHAN

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 15, 2024. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

_/s/ Steven Callahan_
STEVEN CALLAHAN

11